Richard Roos-Collins (State Bar No. 127231)
NATURAL HERITAGE INSTITUTE
100 Pine Street, Suite 1550
San Francisco, CA 94111
Telephone: (415) 693-3000
Facsimile: (888) 589-1974

John A. Russo (State Bar No. 129729)
City Attorney
William E. Simmons (State Bar No. 121266)
Deputy City Attorney
OAKLAND CITY ATTORNEY
1 Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
Telephone: (510) 238-3601
Facsimile: (510) 238-6500

Attorneys for Defendant
CITY OF OAKLAND

Julie Gantenbein (State Bar No. 224475)
NATURAL HERITAGE INSTITUTE
1423 Marshall Street
Houston, TX 77006
Telephone: (707) 931-0034
Facsimile: (866) 779-4316

Christopher Locke (State Bar No. 101704)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff
MILLSMONT HOMEOWNERS
ASSOCIATION

Attorneys for Defendant
DESILVA GATES CONSTRUCTION, L.P.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MILLSMONT HOMEOWNERS
ASSOCIATION,

Plaintiff,

vs.

CITY OF OAKLAND and DESILVA
GATES CONSTRUCTION, L.P.,

Defendants.

Case No. C 06 03955 MMC

~~[Proposed]~~ **CONSENT DECREE**

Plaintiff Millsmont Homeowners' Association ("MHA") and the owners of real properties adjacent to Chimes Creek listed on Exhibit A hereto ("Homeowners") on the one hand, and defendants the City of Oakland (the "City") and DeSilva Gates Construction, L.P. ("DGC"), on the other hand, subject to approval by the Court, hereby agree to the terms and conditions of this Consent Decree. MHA, the Homeowners, the City, and DGC are referred to collectively as the "Parties," or individually as a "Party," to this Consent Decree.

# RECITALS

1

2  WHEREAS, MHA is an unincorporated association of members, including Homeowners,

3 who reside within a largely residential area in central East Oakland, bound by Seminary Avenue

4 to the north, Interstate 580 to the east, Edwards/Sunkist to the south, and with

5 Hillmont/Delmont/Oakdale as its western perimeter, including residential properties located along

6 Chimes Creek as it runs east of Nairobi Place;

7  WHEREAS, the City is a municipal corporation and political subdivision of the State of

8 California, within which Chimes Creek is located;

9  WHEREAS, DGC is the general contractor and Leona LLC is the developer (collectively,

10 "DGC/Leona") of a residential development that was approved by the City in 2003 and is

11 currently under construction, known as the Leona Quarry Project;

12  WHEREAS, storm water from several sources, including Ridgemont, a residential

13 development constructed in the mid-1980s, Interstate 580, Leona Quarry, secondary roads and

14 other properties, flows to Chimes Creek;

15  WHEREAS, significant erosion occurred along Chimes Creek below Nairobi Place during

16 the 1981-1982 El Nino winter and in subsequent years, and was addressed by an Alameda Flood

17 Control District mitigation/restoration project in the early 1990s;

18  WHEREAS, erosion upstream of Nairobi Place began in the 1980s and accelerated in the

19 1990s, and a City sanitary sewer pipe was exposed in several locations along this section of

20 Chimes Creek;

21  WHEREAS, for several years, representatives of MHA, Homeowners and the City have

22 discussed proposals for mitigation of erosion and restoration of Chimes Creek upstream of

23 Nairobi Place, and proposals to repair and upgrade the sanitary sewer;

24  WHEREAS, as a condition of the City's approval of the Leona Quarry Project,

25 DGC/Leona constructed a permanent detention basin to manage peak storm water flows from

26 Ridgemont, as well as Leona Quarry, and thereby mitigate erosion in Chimes Creek;

27  WHEREAS, the detention basin was constructed in accordance with a design developed

28 by Balance Hydrologics, Inc., and approved by the City. The design provides a multi-purpose

1   water quality and detention basin with a small outlet near the base of the water-quality riser that

2   controls the release of water that accumulates in the basin during and after storm events, and a

3   larger detention outlet set approximately ten (10) feet higher in a separate detention riser that

4   attenuates peak discharge when the water quality volume is filled to approximately three (3) acre

5   feet. The lower outlet is designed to drain accumulated water from the basin over a period of 48

6   hours following a storm event, to address vector control, promote growth of healthy vegetation in

7   the basin and protect water quality;

8       WHEREAS, the capacity of the detention basin when filled to the upper outlet exceeds the

9   3,600 cubic feet of storage per acre draining into the basin, as specified for construction-phase

10  sediment basins under the Construction General Permit;

11      WHEREAS, the Regional Water Quality Control Board's ("Regional Board's") comments

12  to the City on the Subsequent EIR for the Leona Quarry Project, dated September 3, 2003,

13  reviewed the permanent design of the detention basin and stated "[i]n general, we would support

14  a water quality design that incorporates either a permanent pool, or detention of 48 hours or less.

15  Each of these designs should include appropriate measures to control vectors such as

16  mosquitoes;"

17      WHEREAS, the Regional Board has submitted other comments and issued other notices

18  on the design and operation of the detention basin, as documented in its records;

19      WHEREAS, the City and DGC received a notice of MHA's intent to file a citizen suit,

20  dated March 28, 2006, for alleged violations of the Clean Water Act, California Water Code,

21  Construction General Permit and Municipal General Permit relating to discharges to Chimes

22  Creek, among the other alleged violations ("60-Day Notice");

23      WHEREAS, on June 26, 2006, MHA filed a Complaint against the City and DGC,

24  entitled *Millsmont Homeowners Association v. City of Oakland and DeSilva Gates Construction,*

25  *L.P.,* No. C 06-03955 MMC, in the United States District Court for the Northern District of

26  California, alleging violations of the Clean Water Act, California Water Code Construction

27  General Permit and Municipal General Permit;

28

[Proposed] CONSENT AGREEMENT
Case No. C 06 03955 MMC                                    - 3 -                                    20891\1165714.1

WHEREAS, the Parties engaged in settlement discussions and an informal exchange of information prior to and following service of the Complaint, and those settlement discussions have produced (1) an agreement by DGC/Leona to provide funding for a feasibility study for restoration of Chimes Creek upstream of Nairobi Place (the "Creek Project"); (2) an agreement by the Parties on a scope for the feasibility study, as described in the *Preliminary Work Scope Outline, Chimes Creek Restoration Feasibility Study* ("Feasibility Study") attached as Exhibit B hereto; and (3) an agreement by MHA and the City to engage in cooperative efforts to seek funding from third parties for the restoration project following completion of the Feasibility Study, among other settlement terms;

WHEREAS, the City filed its notice of completion of the repairs on the sanitary sewer along Chimes Creek, identified as City Project C67310 ("Sanitary Sewer Project"), on or about November 10, 2006;

WHEREAS, the Parties have met and conferred concerning other claims, allegations and issues presented by the 60-Day Notice and Complaint;

WHEREAS, the Parties understand that the City Council has reviewed and, upon City Staff's recommendation, approved the settlement prior to execution of this Consent Decree, including authorization of the actions described in Section 1 below; and

WHEREAS, in order to avoid the time, expense and uncertainty of further litigation, and with no admission of liability or the validity of any claim, allegation or defense, and to enable the Feasibility Study and Creek Project to go forward, and subject to approval by the Court, the Parties hereby agree to the terms and conditions of this Consent Decree.

NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.   INJUNCTIVE RELIEF

1.   Feasibility Study.

a.   The Parties will select a mutually agreeable consultant ("Consultant") to conduct the Feasibility Study, subject to any City Council approval that may be required, no later than thirty (30) calendar days following the Parties' execution of this Consent Decree.

1           b.      The City will strive to execute a Consultant Agreement with the Consultant

2   within forty-five (45) calendar days of the Parties' joint selection of the Consultant, subject to any

3   required City Council approval and provided that the selected Consultant meets all the normal

4   contracting requirements of the City.   The City will consult with MHA as to the terms of the

5   Consultant Agreement.  The funding provided by DGC/Leona under Section 4, below, will be

6   exclusively used to cover the fees and expenses authorized by the Consultant Agreement.

7           c.      The Consultant Agreement shall provide for the Consultant to complete the

8   Feasibility Study, at a cost not to exceed the $65,000 in funding as provided by DGC/Leona, no

9   later than one-hundred twenty (120) calendar days following the execution of the Consultant

10   Agreement, unless extended by mutual agreement of the City and MHA.

11           d.      In the event that the Consultant Agreement has not been executed by the

12   date scheduled for the hearing on Court approval of the Consent Decree, the Parties will stipulate

13   to continue the date of such hearing until after the execution of the Consultant Agreement.

14           e.      MHA will obtain agreement and signatures from the Homeowners, and

15   each of them, for access by the Consultant and the City to private property on and along Chimes

16   Creek for activities necessary and appropriate for performance of the Feasibility Study in the

17   form attached hereto as Exhibit C, upon the Parties' execution of the Consent Decree.

18        2.    Project Manager.  The City will provide MHA with the name and contact

19   information of the City's Project Manager.  The Project Manager will specifically be the contact

20   for MHA's communications related to: the selection of the Consultant (Section 1.a above), the

21   Consultant Agreement (Section 1.b above), the conduct of the Feasibility Study (Section 1.c

22   above), efforts to secure funding for the Creek Project (Section 3.a below), and the Creek Project

23   (Sections 3.b – 3.c below).

24        3.    Creek Project.  The City staff and MHA will jointly undertake reasonable efforts

25   to obtain funding from the Alameda County Flood Control District, the U.S. Army Corps of

26   Engineers, and other suitable public and private funding sources, including the possibility of

27   funding from the City, to design, construct, and thereafter operate and maintain, the Creek Project

28   as described in the Feasibility Study.

1          a.      Within two months of Court approval and entry of the Consent Decree, the

2    City staff and MHA will jointly develop a non-exclusive list of potentially suitable funding

3    sources for the Creek Project.  The list will include a schedule and lead contact (which may be

4    City staff or MHA) for approaching each such source and applying for funding.  Subject to any

5    required City Council approval, the City and MHA will undertake to secure funding for

6    construction of the Creek Project, as recommended in the Feasibility Study, within two years after

7    completion of that Study, unless MHA and the City mutually agree to an extension.

8          b.      If such funding is secured, the City and MHA will work cooperatively to

9    develop mutually agreeable provisions for design, permitting, temporary construction rights-of-

10    entry and construction of the Creek Project, as recommended in the Feasibility Study.  Among

11    other things, the City and MHA will request and seek the cooperation of the Alameda County

12    Flood Control District, including but not limited to funding described above, for such

13    construction, operation, and maintenance of the Creek Project.

14          c.      Mutually agreeable provisions for access, construction, operation, and

15    maintenance of the Creek Project will be documented in an amendment to the Consent Decree, or

16    other appropriate form.

17                  **II.**      **MONETARY TERMS**

18    4.      <u>Supplemental Environmental Project</u>.  DGC/Leona will fund the Feasibility Study

19    in an amount not to exceed $65,000.00, to be used exclusively for funding of the Feasbility Study.

20    Such funding will be provided by check, payable to the "City of Oakland" and delivered as

21    follows within thirty (30) days of the Effective Date:

22
23              Michael Neary, P.E.
                    Assistant Director

24              Design & Construction Services Department
                    City of Oakland Public Works Agency

25              250 Frank H. Ogawa Plaza, Suite 4314
                    Oakland, CA  94612

26    5.      <u>Reimbursement of MHA Fees and Costs</u>.  DGC/Leona will reimburse MHA in the

27    total amount of Twenty-Five Thousand Dollars ($25,000.00), and the City will reimburse MHA

28

1  in the total amount of Twenty-Five Thousand Dollars ($25,000.00), as a compromise of

2  plaintiffs' demand for reimbursement of attorney's fees and costs, consultant and expert fees and

3  costs, and all other fees and costs incurred by or on behalf of MHA in connection with the claims,

4  allegations, litigation and settlement discussions resolved by this Consent Decree.  Such

5  reimbursement will be by checks issued by DGC/Leona and the City as stated above, payable to

6  the "Natural Heritage Institute," and delivered as follows within thirty (30) days of the Effective

7  Date:

8        Richard Roos-Collins, Esq.
9        Natural Heritage Institute
         100 Pine Street, Suite 1550
10       San Francisco, CA  94111

11      **III.**    **DISPUTE RESOLUTION AND ENFORCEMENT**

12      6.    If a dispute arises as to the claims, allegations and matters addressed by this

13  Consent Decree, including without limitation past or future discharges to Chimes Creek, or if any

14  Party believes that a breach of this Consent Decree has occurred, the Parties shall meet and confer

15  within thirty (30) days of receiving written notification from any other Party of a request for a

16  meeting.  This notification shall explicitly state the nature, underlying facts and legal grounds for

17  the dispute or alleged breach.  At this meeting, the Parties shall discuss the dispute or alleged

18  breach and seek to develop a mutually agreed upon plan, including implementation dates, to

19  resolve the dispute or alleged breach.  If the Parties fail to meet and confer or if the meeting does

20  not resolve the issue, and after at least seven (7) days have elapsed since the meet and confer

21  occurred or should have occurred, each Party shall be entitled to all rights and remedies under the

22  law, including bringing a motion before the United States District Court for the Northern District

23  of California, which shall retain jurisdiction over the action for the Term of this Consent Decree,

24  for the limited purposes of enforcement of the terms of this Consent Decree.

25      **IV.**    **JURISDICTION**

26      7.    For the purposes of entry and enforcement of this Consent Decree, the Parties

27  stipulate that the United States District Court has jurisdiction over the Parties and subject matter

28  over this action, and that venue is appropriate in the Northern District of California.  The Parties

1  further stipulate that the Court shall retain jurisdiction over the Parties for the Term of this

2  Consent Decree with respect to disputes arising under this Consent Decree for which any of the

3  Parties invoke dispute resolution and quarterly status reports by the Parties, as provided herein.

## V.   DISMISSAL, WAIVER AND RELEASE

5  8.  MHA and the Homeowners shall dismiss, release and waive claims, on their own

6  behalf and on behalf of their respective members, successors, assigns, heirs, insurers, executors

7  and other representatives (collectively, "Releasors"), as follows:

8  a.  Municipal Wastewater.  Effective upon the Parties' execution of the

9  Consent Decree, claims in the Complaint against the City related to alleged discharges from the

10  sanitary sewer system (specifically, Claims 28 – 31) will be dismissed with prejudice, and

11  Releasors waive and covenant not to sue the City, and its elected and appointed officials, officers,

12  directors, employees, contractors and subcontractors, and each of their predecessors, successors,

13  assigns, insurers, agents, attorneys, consultants and other representatives, with respect to all other

14  such claims that were brought or could have been brought in the Complaint regarding such

15  alleged discharges, arising through the Effective Date of the Consent Decree.  This waiver and

16  release does not include any of the Homeowners' claims for alleged property damage occurring

17  as a result of construction of the Sanitary Sewer Project.

18  b.  Leona Quarry Project.  Upon the Effective Date of the Consent Decree:  (i)

19  claims in the Complaint against DGC and/or the City relating to the Leona Quarry Project will be

20  dismissed with prejudice; and (ii) Releasors waive, release and covenant not to sue DGC and the

21  City, and their respective elected and appointed officials, officers, directors, employees,

22  shareholders, parents, subsidiaries, affiliates (including, without limitation, Leona LLC),

23  contractors and subcontractors, and each of their predecessors, successors, assigns, insurers,

24  agents, attorneys, consultants and other representatives as to all other claims related to the Leona

25  Quarry Project that were brought or could have been brought in the Complaint, arising through

26  the Effective Date of the Consent Decree.

27  c.  Other Claims.  Upon the Effective Date, all remaining claims in the

28  Complaint against the City and/or DGC will be dismissed with prejudice.  Additionally, if the

1    Creek Project is completed pursuant to Sections 3.b and 3.c, above, Releasors waive and covenant

2    not to sue the City and DGC, and their respective elected and appointed officials, officers,

3    directors, employees, shareholders, parents, subsidiaries, affiliates (including, without limitation,

4    Leona LLC), contractors and subcontractors, and each of their predecessors, successors, assigns,

5    insurers, agents, attorneys, consultants and other representatives, with respect to (i) all other

6    claims that could have been brought in the Complaint regarding such discharges from the City's

7    storm water system, including all claims for property damage and inverse condemnation resulting

8    from such discharges (regardless of the origin of such discharges), arising through the date of

9    completion of the Creek Project; and (ii) any future claims alleging property damage and inverse

10   condemnation from storm water discharges that are within the design standards of the Creek

11   Project; provided, however, that such claims are expressly reserved by Releasors unless and until

12   the Creek Project is completed.

13          d.     Releasors expressly waive any rights or benefits available to them under

14   the provisions of California Civil Code § 1542, which provides as follows:

15           A general release does not extend to claims which the creditor does
           not know or suspect to exist in his favor at the time of executing the
16           release, which if known by him must have materially affected his
           settlement with the debtor.

17

18       9.     <u>DGC Release of the City as to Litigation Expenses</u>. DGC, on its own behalf and

19   on behalf of its officers, directors, employees, shareholders, parents, subsidiaries, affiliates,

20   contractors and subcontractors, and each of their predecessors, successors, assigns, insurers,

21   agents, attorneys, consultants and other representatives, releases the City, and its elected and

22   appointed officials, officers, directors, employees, shareholders, parents, subsidiaries, affiliates,

23   contractors and subcontractors, and each of their predecessors, successors, assigns, insurers,

24   agents, attorneys, consultants and other representatives, and waives, all claims, allegations, and

25   requests for reimbursement for attorneys fees and costs, consultant fees and costs, administrative

26   costs, settlement payments and expenses, costs of litigation and other expenses relating directly or

27   indirectly to the claims released in Section 8 above.

28

10.   City Release of DGC as to Litigation Expenses. The City, on its own behalf and on behalf of its elected and appointed officials, officers, directors, employees, shareholders, parents, subsidiaries, affiliates, contractors and subcontractors, and each of their predecessors, successors, assigns, insurers, agents, attorneys, consultants and other representatives, releases DGC, and its officers, directors, employees, shareholders, parents, subsidiaries, affiliates (including, without limitation, Leona LLC), contractors and subcontractors, and each of their predecessors, successors, assigns, insurers, agents, attorneys, consultants and other representatives, and waives, all claims, allegations, and requests for reimbursement for attorneys fees and costs, consultant fees and costs, administrative costs, settlement payments and expenses, costs of litigation and other expenses relating directly or indirectly to the claims released in Section 8 above.

11.   Recordation of Releases and Access Agreement. The Parties stipulate and agree that a Declaration of Covenants Running with the Land, in the form attached hereto as Exhibit D, will be recorded by the City and MHA as to each Homeowners' real property identified in Exhibit A, within thirty (30) days of the Effective Date. Nothing contained in this Consent Decree, or in Exhibit D or Exhibit C to this Consent Decree, nor the execution or recording of this Consent Decree or Exhibit D or Exhibit C to this Consent Decree, shall create, or shall be deemed to create, any additional easement, or any covenant other than those expressly stated herein.

12.   Notice to Prospective Purchasers. The Homeowners, and each of them, further stipulate, agree and warranty that, pursuant to this Consent Decree, each Homeowner is obligated to disclose to and obtain the assumption by its successors and assigns, the terms of this Consent Decree and that, without limiting its disclosure obligations, each Homeowner will provide a copy of this Consent Decree and exhibits, including the Declaration of Covenants (Exhibit D) and Access Agreement (Exhibit C) to this Consent Decree, to any prospective purchaser in any transaction contemplated to occur before recordation as provided in Section 11 above.

13.   No Admission. The Parties enter into this Consent Decree for the purpose of avoiding the time, expense and uncertainty of further litigation. Nothing in this Consent Decree shall be construed as, and the City and DGC expressly do not intend to imply, any admission as to

1    any alleged fact, finding, issue of law, or violation of law, nor shall compliance with this Consent

2    Decree constitute or be construed as an admission by the City or DGC of any alleged fact,

3    finding, conclusion, issue of law; or violation of law.  However, this paragraph shall not diminish

4    or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent

5    Decree.

6                   **VI.    MISCELLANEOUS PROVISIONS**

7           14.     Court Approval.  This Consent Decree is subject to notice, review and comment by

8    the United States Department of Justice, and approval by the Court, as provided by the Clean

9    Water Act.

10          15.     Effective Date.  The Effective Date of this Consent Decree shall be the date of

11   approval and entry by the Court.

12          16.     Term of Consent Decree.  The Consent Decree shall continue in effect for a period

13   of five (5) years from the Effective Date, and shall automatically terminate upon the expiration of

14   that five (5) year Term without further notice.

15          17.     Execution in Counterparts.  The Consent Decree may be executed in one or more

16   counterparts which, taken together, shall be deemed to constitute one and the same document.

17          18.     Severability.  In the event that any of the provisions of this Consent Decree are

18   held by a court to be unenforceable, the validity of the enforceable provisions shall not be

19   adversely affected.

20          19.     Construction.  The language in all parts of this Consent Decree, unless otherwise

21   stated, shall be construed according to its plain and ordinary meaning.

22          20.     Authority to Sign.  The undersigned are authorized to execute this Consent Decree

23   on behalf of their respective Parties and have read, understood and agreed to all of the terms and

24   conditions of this Consent Decree.

25          21.     Integrated Consent Decree.  All agreements, covenants, representations and

26   warranties, express or implied, oral or written, of the Parties concerning the subject matter of this

27   Consent Decree are contained herein.

28

1       22.   Delivery of Notice or Documents.  Any notices or other documents required or

2   provided for by this Consent Decree or related thereto that are to be provided to any of the Parties

3   pursuant to this Consent Decree shall be sent by both facsimile or e-mail transmission and first-

4   class mail to each of the following representatives of the Parties.  Notice shall be deemed to be

5   given and received on the date received by facsimile or e-mail transmission, if such notice is

6   given by facsimile or e-mail transmission to all recipients between 9:00 a.m. and 5:00 p.m.

7   Pacific Standard Time ("PST") on a business weekday.  If notice is given by facsimile or e-mail

8   transmission after 5:00 p.m. PST on a weekday or on a weekend day, notice shall be deemed

9   received on the next business weekday.

10       Notices or documents for MHA shall be sent to:

11
          Chiye Azuma
12          Secretary, MHA
          3829 Delmont Avenue
13          Oakland, CA  94605
          Telephone:  (510) 632-6210
14          Facsimile:  (510) 635-2678
          E-mail:  chiye@cazuma.com
15   With copies sent to:

16
          Richard Roos-Collins, Esq.
17          Natural Heritage Institute
          100 Pine Street, Suite 1550
18          San Francisco, CA 94111
          Telephone:  (415) 693-3000
19          Facsimile:  (415) 693-3178
          E-mail:  rrcollins@n-h-i.org
20   Notices or documents for the City shall be sent to:

21
          Michael Neary, P.E.
22          Assistant Director
          Design & Construction Services Department
23          City of Oakland Public works Agency
          250 Frank H. Ogawa Plaza, Suite 4314
24          Oakland, CA  94612
          Telephone:  (510) 238-6659
25          Facsimile:  (510) 238-6412
          E-mail:  mjneary@oaklandnet.com
26

27

28

1    With copies sent to:

2

3      John A. Russo
     City Attorney
     William E. Simmons, Esq.

4      Deputy City Attorney
     J. Patrick Tang, Esq.

5      Deputy City Attorney
     City of Oakland

6      1 Frank H Ogawa Plaza, 6th Floor
     Oakland, CA  94612

7      Telephone:  (510) 238-3601
     Facsimile:  (510) 238-6500

8      E-mail:  wesimmons@oaklandcityattorney.org
     E-mail:  jptang@oaklandcityattorney.org

9

10    Notices of documents for the DeSilva shall be sent to:

11      Michael Willcoxon, Esq.
     Law Offices of Michael Willcoxon

12      11555 Dublin Blvd., Suite 201
     Dublin, CA  94568

13      Telephone:  (925) 803-4277
     Facsimile:  (925) 803-4270

14      E-mail:  mwillcoxon@desilvagroup.com

15    With copies sent to:

16

17      Christopher Locke, Esq.
     Farella Braun + Martel LLP

18      235 Montgomery Street, 17th Floor
     San Francisco, CA  94104

19      Telephone:  (415) 954-4486
     Facsimile:  (415) 954-4480

20      E-mail:  clocke@fbm.com

21      23.    <u>Facsimile Signatures</u>.  The Parties' signatures to this Consent Decree transmitted

22 by facsimile shall be deemed binding.

23      24.    <u>Attorneys' Fees and Costs</u>.  Except as provided in Paragraph 5 herein, each Party

24 shall bear its own attorneys' fees and costs, expert and consultant fees and costs, litigation costs

25 and expenses, and settlement costs and expenses.

26      25.    <u>Impossibility of Performance</u>.  No Party shall be considered to be in default in the

27 performance of any of its obligations under this Consent Decree when performance becomes

28

1   impossible due to circumstances beyond the Party's control, or when failure to perform is

2   materially contributed to by circumstances beyond the Party's control, including without

3   limitation any Force Majeure, including any act of God, war, fire, earthquake, windstorm, flood

4   or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order

5   or public authority; or action or non-action by, or inability to obtain the necessary authorizations

6   or approvals from any governmental agency. "Circumstances beyond the Party's control" shall

7   not include normal inclement weather, economic hardship or inability to pay. Any Party seeking

8   to rely upon this paragraph shall have the burden of establishing that it could not reasonably have

9   been expected to avoid, and which by exercise of due diligence has been unable to overcome, the

10  failure of performance.

11      26.    Court Approval. If for any reason the Court should decline to approve this

12  Consent Decree in the form presented, the Parties shall use their best efforts to work together to

13  modify the Consent Decree within thirty (30) days so that it is acceptable to the Court. If the

14  Parties are unable to modify this Consent Decree in a mutually acceptable manner within thirty

15  (30) days, this Consent Decree is voidable at the sole discretion of any Party and the terms of this

16  Consent Decree may not be used as evidence in any litigation between the Parties.

17      27.    Quarterly Status Reports. On a quarterly basis, the Parties will jointly provide the

18  Court with a report summarizing the status of their performance of such tasks, until excused by

19  the completion of all tasks for which a Party is responsible under this Consent Decree.

20      28.    Press Release. The Parties agree to jointly issue a press release concerning the

21  settlement documented by this Consent Decree, in the form attached hereto as Exhibit F ("Joint

22  Press Release"), within one (1) week of the Effective Date.

23      29.    Final Judgment. The Parties hereto enter into this Consent Decree and submit it to

24  the Court for approval and entry as a final judgment.

    Dated:  9/4/08                        MILLSMONT HOMEOWNERS ASSOCIATION

25

26

27                                    By
                                          Nancy Sidebotham
28                                        President

Dated:                          CITY OF OAKLAND

                               By: _____
                                   City Administrator

Dated:                          DESILVA GATES CONSTRUCTION, L.P.

                               By: _____
                                   Ernest D. Lampkin
                                   Vice President and CFO

                               [Homeowners' Signatures Attached]

        UPON STIPULATION AND AGREEMENT OF THE PARTIES, AND GOOD CAUSE

APPEARING, IT IS HEREBY ORDERED that this Consent Decree is approved and judgment is

entered accordingly, subject to the continuing jurisdiction of the Court for the five (5) year Term

of this Consent Decree with respect to the resolution of any disputes that may arise under the

Consent Decree, quarterly status reports by the Parties, and enforcement of the following

obligations of the Parties under the Consent Decree:

        1.      DeSilva/Leona's funding of the Feasibility Study in an amount not to exceed

$65,000;

        2.      Completion of the Feasibility Study, as provided in Section 1, above;

        3.      Reasonable efforts by the City and MHA to obtain funding for the Creek Project

following completion of the Feasibility Study, as provided in Section 2, above; and

        4.      If such funding is secured, reasonable efforts by the City and MHA to develop

mutually agreeable provisions for access, construction, operation, and maintenance of the Creek

Project, as provided in Section 2, above.

APPROVED AND SO ORDERED:

Dated:                          _____
                               MAXINE M. CHESNEY, Judge
                               United States District Court

1

Dated:                                    CITY OF OAKLAND

2

3
                                          By: _____
4                                              City Administrator

5    Dated:                                DESILVA GATES CONSTRUCTION, L.P.

6

7                                          By: *Ernest D. Lampkin*
                                               _____
8                                              Ernest D. Lampkin
                                               Vice President and CFO

9                                          [Homeowners' Signatures Attached]

10           UPON STIPULATION AND AGREEMENT OF THE PARTIES, AND GOOD CAUSE

11   APPEARING, IT IS HEREBY ORDERED that this Consent Decree is approved and judgment is

12   entered accordingly, subject to the continuing jurisdiction of the Court for the five (5) year Term

13   of this Consent Decree with respect to the resolution of any disputes that may arise under the

14   Consent Decree, quarterly status reports by the Parties, and enforcement of the following

15   obligations of the Parties under the Consent Decree:

16           1.      DeSilva/Leona's funding of the Feasibility Study in an amount not to exceed

17   $65,000;

18           2.      Completion of the Feasibility Study, as provided in Section 1, above;

19           3.      Reasonable efforts by the City and MHA to obtain funding for the Creek Project

20   following completion of the Feasibility Study, as provided in Section 2, above; and

21           4.      If such funding is secured, reasonable efforts by the City and MHA to develop

22   mutually agreeable provisions for access, construction, operation, and maintenance of the Creek

23   Project, as provided in Section 2, above.

24   APPROVED AND SO ORDERED:

25

26   Dated:   December 5, 2008            _____
                                          MAXINE M. CHESNEY, Judge
27                                        United States District Court

28

---

[Proposed] CONSENT AGREEMENT
Case No. C 06 03955 MMC                          - 15 -                          20891\1165714.1

# ATTACHMENT

1    Dated: 8/27/08

**6367 and 6375 Hillmont Drive**

By: _____
     Nancy S. Sidebotham

8    Dated: 8/27/08

**6383 and 6391 Hillmont Drive**

By: _____
     Nancy S. Sidebotham

11  Dated:

**6401 Hillmont Drive**

By: _____
     Eddie Buntyon

15  Dated:

**6401 Hillmont Drive**

By: _____
     Helen B. Buntyon

Dated:

**6409 Hillmont Drive**

By: _____, on behalf of the
     Edward and Alice Boddy Trust

Dated:

**6417 Hillmont Drive**

By: _____
     Timothy David Peters

9/4/08

Dated:                                    **6425 Hillmont Drive**


By:_____
Cindy Regnier

Dated: 8/27/8                             **6433 Hillmont Drive**


By: _Leroy Burnett_____
Leroy Burnett Trust

Dated:                                    **6441 Hillmont Drive**
8/27/08

By: _Grace Simonds_____
Grace Simonds

Dated: Att 8/27/08                        **6509 Hillmont Drive**
8/27/08

By: _Alison J. Hardy_____
Alison J. Hardy

Dated: 8/27/08                            **6515 Hillmont Drive**


By: _Paula A. Shelby____, on behalf of the
Paula A. Shelby Trust

Dated: 8/30/08                            **6525 Hillmont Drive**


By:_Hill Cavallari_____
Hector M. Cavallari

Dated:                                    **6230 Oakdale Avenue**


By:_____
Wells Fargo Bank

- 2 -

1

Dated:                                    **6236 Oakdale Avenue**

2

3

                                          By:_____
4                                            Riba M. Edwards

5    Dated:                                **6236 Oakdale Avenue**

6

7                                          By:_____
                                             Willie Edwards
8
     Dated:                                **6242 Oakdale Avenue**
9

10
                                           By:_____
11                                           Veda Guess

12   Dated:                                **6242 Oakdale Avenue**

13

14                                         By:_____
                                             Lee Guess
15
     Dated:                                **3822 Nairobi Place**
16

17

18                                         By:_____
                                             Thomas Hides
19   Dated:                                **3801 Delmont Avenue**
     08-27-08
20

21                                         By:_____
                                             Famous   Limbrick  Jr.
22
     Dated: 8/27/08                        **3801 Delmont Avenue**
23

24
                                           By:_____
25                                           Glinda D. Limbrick

26

27

28

- 3 -

20891\1193714.2

Dated: 8/24/2008

3805 Delmont Avenue

By: _____
Deionne Duplessis
De Ionne du Plessis

Dated:

9/4/08

3809 Delmont Avenue

By: _____
Irma Perez

Dated: 9/4/08

3809 Delmont Avenue

By: _____
Magdaleno Navarro

Dated: AUG-27-2008

3815 Delmont Avenue

By: _____
Johnny Lau

Dated:

3819 Delmont Avenue

By: _____
Doug Polentz

Dated: 9/1/08

3825 Delmont Avenue

By: _____
Wi K. Tang

Dated: 8/27/08

3829 Delmont Avenue

By: _____
Steve Leikin

- 4 -

20891\1193714.2

1

2
Dated:                                    **3805 Delmont Avenue**

3

4
By:_____
Deionne Duplessis

5
Dated:                                    **3809 Delmont Avenue**

6

7
By:_____
Irma Perez

8
Dated:                                    **3809 Delmont Avenue**

9

10
By:_____
Magdaleno Navarro

11

12
Dated:                                    **3815 Delmont Avenue**

13

14
By:_____
Johnny Lau

15
Dated:                                    **3819 Delmont Avenue**

16

17
10/3/08

18
By:_____
Doug Polentz

19
Dated:                                    **3825 Delmont Avenue**

20

21
By:_____
Wi K. Tang

22
Dated:                                    **3829 Delmont Avenue**

23

24
By:_____
Steve Leikin

25

26

27

28

- 4 -

1

2   Dated: 8/27/08                    **3829 Delmont Avenue**

3

4                                     By: _____
                                          Chiye Azuma
5   Dated: 8/10/08                    **3835 Delmont Avenue**

6

7                                     By: _____
                                          Nancy G. Peterson
8

9   Dated:                           **3839 Delmont Avenue**
        8/24/08
10
                                      By: _____
11                                        Steve Luntz

12  Dated:                           **3839 Delmont Avenue**

13
        8/24/08
14                                    By: _Annie Myers_____ ( for Luntz)
                                          Annie Luntz        Myers
15

16  Dated:                           **3845 Delmont Avenue**
        09-04-2008
17
                                      By: _Albert E Moreno_____
18                                        Albert E. Moreno

19  Dated: 8/23/08                   **3849 Delmont Avenue**

20

21                                    By: _____
                                          Frances V. Gomez
22

23  Dated:                           **3855 Delmont Avenue**

24  08/27/08

25                                    By: _____
                                          Phillip McGill
26

27

28

                                      - 5 -                          20891\1193714.2

1

2   Dated: 08/27/08                    **3859 Delmont Avenue**

3
                                       By: _____
4                                          Phillip McGill

5   Dated: 8-17-08                     **3865 Delmont Avenue**

6
                                       By: _____
7                                          David M. Lyons

8   Dated: 8-17-08                     **3873 Delmont Avenue**

9
                                       By: _____
10                                         David Lyons

11

12  Dated: 27 Aug 08                   **6217 Hillmont Drive**

13
                                       By: _____
14                                         Lynne M. Rice

15  Dated:                             **6225 Hillmont Drive**

16

17
                                       By: _____
18                                         Anna L. Lepree

19  Dated: 8/27/08                     **6233 Hillmont Drive**

20
                                       By: _____
21                                         Deanna Leth

22
                                       **6233 Hillmont Drive**
23  Dated: 8/27/08

24                                     By: _____
                                           Thomas Leth
25

26

27

28
                              - 6 -                        20891\1193714.2

1

2  Dated:
   8-28-08

3

4

5  Dated: 8/28/08

6

7

8

9  Dated: 8-27-08

10

11

12  Dated:
13  8-28-08

14

15  Dated:

16

17  8/27/08

18

19

20  Dated: 8-28-08

21

22

23  Dated:

24

25

26

27

28

6251 **Hillmont Drive**

By: _____
    Mayford Dare

6251 **Hillmont Drive**

By: _____
    Donald Dare

6261 **Hillmont Drive**

By: _____
    Ronald L. Fleming

6269 **Hillmont Drive**

By: _____
    Laverne E. Foley Williams
              Forncym

6301 **Hillmont Drive**

By: _____, on behalf of the
    _____
    Diana M. Barrett Trust

6311 **Hillmont Drive**

By: _____
    Ali Fuad

6351 **Hillmont Drive**

By: _____
    Walter L. Mann

- 7 -

20891\1193714.2

1

Dated: _____          **6251 Hillmont Drive**

2

3

By:_____

4

Mayford Dare

5

Dated: _____          **6251 Hillmont Drive**

6

7

By:_____

8

Donald Dare

Dated: _____          **6261 Hillmont Drive**

9

10

By:_____

11

Ronald L. Fleming

12

Dated: _____          **6269 Hillmont Drive**

13

14

By:_____

Laverne E. Foley Williams

15

Dated: _____          **6301 Hillmont Drive**

16

17

By:_____, on behalf of the

18

Diana M. Barrett Trust

19

Dated: _____          **6311 Hillmont Drive**

20

21

By:_____

22

Ali Fuad

23

Dated: _____          **6351 Hillmont Drive**

24

*10/3/08*

By: *Patricia B. Sance*

25

~~Walter I. Mann~~ *PATRICIA B. SANCHEZ*

*10/3/08*

26

27

By: *Christ*

*CHRISTIAN GOMEZ*

28

- 7 -                              20891\1193714.2

1

Dated:   8|27|08                              **6359 Hillmont Drive**

2

3
                                             By: _Renee Beck_____
4                                                Renee Beck

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -                                          20891\1193714.2